Good morning, Your Honors. Ajay Mathew for the petitioner. Your Honors, the issue in this case is petitioner's credibility. The immigration judge held that she was not a credible witness, and in this finding she focused on two particular aspects of her testimony. One, that she was not able to give a clear and coherent account regarding circumstances that led to her 1995 arrest in a way that was consistent with her written application. And two, that she was unable to give a clear and coherent account of any relationship between the court case that she filed to find her husband and her arrest on August 24, 1996. I think in addressing these credibility findings, we must keep in mind that she is an illiterate and unsophisticated village woman. As the record shows, she was not even able to do simple math to calculate the ages of her children, and she did testify that she only had a third grade education. So keeping that in mind, I'd like to first address why she was not able to give a clear and coherent account of the reasons that led up to her arrest. On her declaration, she states that the reason she was arrested was because her husband gave a speech at a local event at her local Gurdwara regarding an attack on a Gurdwara, but she was not able to state which Gurdwara was attacked. And she just initially said it was a Gurdwara in India, but she was not able to state which particular Gurdwara. Later on cross-exam, she remembered that it was a Gurdwara in Amritsar, but she wasn't able to identify the Gurdwara. And I think what we have to keep in mind here is that the petitioner is an unsophisticated witness, and more than that, she never testified to being a political person. She testified that, you know, she never testified to being involved in any political activities or even knowing what organization her husband was involved in. Well, Counsel, I guess what bothers me is that whether she's unsophisticated or not, she's talking about her own life experiences, not as though she's trying to testify about space matters involving satellites. So all she's trying to do is to say, this is what happened to me. So her sophistication shouldn't bear on the fact that she understands it, unless she's mentally incompetent or has some sort of deficiency that's not in the record. Well, Your Honor, I think as to what happened to her, she was able to testify clearly and consistently with regards to historical or background information, which she might not have been aware of as an uneducated woman. Yeah, that she had some problem with because she was not a political person. She did not get involved in the Akali organization. But as far as her being arrested, what happened to her husband, what happened when the police came to her house, what happened in the jail, she clearly testified to that. But she wasn't present at the Gurdwara when her husband gave a speech. She didn't go to that event to know what it was about. And I think her confusion stems from the fact that she doesn't know exactly why her husband went to this event, what speech he gave, what this, she had a vague idea that there was some attack on the Gurdwara, but she doesn't know the relationship necessarily between the event that happened at the local Gurdwara and the event that took place in 1984. Well, what do we do with the transcript, just as an example, a transcript at 130 to 131, where there's this back and forth about the attack on the Gurdwara. At one point she says it's on June 6, 1995. And then the question is, so the Gurdwara was on June 6. And then she says, where was this Gurdwara? She says it's in Serapore. Is this where your husband was arrested? No, he was arrested the second day from home. And then you go over to the next page, and suddenly they're talking about, they raided our home the second day. I'm not talking about the raid on your home. I'm talking about the Gurdwara you referred to. She starts talking about slogans. Then the judge says, did the police or anyone attack the Gurdwara in Serapore? And she says, no, I do not know. And yet she just said previously that that's where it happened in June. And then all of a sudden, the judge says, what attack on the Gurdwara are you talking about? And she says the one that was launched in 1984. So, you know, if I'm the immigration judge, I'm thinking that this woman can't get her story straight. Now, one of the questions I had in looking through the transcript, there seemed to be some issues of translation, perhaps, with the interpreter. But nobody's raised that. So I don't know whether or not, you know, we can't tell from a cold transcript what the dynamic is, the human dynamic is that's going on in this process. And I'm, so I'm at a loss to know how we should evaluate from a cold transcript this inability of the petitioner to keep her story straight, even within the two pages that I've just referred to. So how do you react to that? Well, Your Honor, again, I think that she was not aware exactly. She's not a historically minded person. She was just vaguely aware that there was some attack on some Gurdwara. Well, but she says it happened on 6-6-95. And then she says and she answers the question, where did it happen? And then the next page she's saying it was, she doesn't know where it was and that it was, but she was talking about 19, 1984. I think she was just confused because she knew there was some attack and that her husband's speech had to do with some attack, but she wasn't privy to, she wasn't knowledgeable about the historical information. And the police were, she knew that the police were present at that Gurdwara, at the local Gurdwara, so she may have thought there was some altercation there between the police. And as far as translation problems, I'd like to address that in addressing the second issue, the connection between the filing of her papers and her second arrest in August 96. And I think if you look at the record, up until the 141 of the record, she's consistent. She testifies every single time that there were two times she filed papers. You can look at, on cross-exam, on 104 and 107 of the record, she both, she states each time, I filed papers after 95 arrests and I filed papers after 96 arrests. Then in cross-exam, she sticks to that same story. And it's only at pages 142, 143, where there's some confusion. And that's almost at the very end of her cross-exam. And I'd just like to direct your honors to that, to those pages. You'll see on page 141, around line 16, she is talking about having filed papers after her second release. And then on page 142, Judge asked her, or the judge asked her, and she says, yes, it was the second time I had done it to locate my husband. Well, what did you do it for the first time? And she says, no, did not do it the first time. I'd done it the second. Now, I think when you look at that in the totality of her overall testimony, which was consistent, and in what immediately follows on later on, 142, 143, I think what she's trying to say is, no, this was not the first time I did it. And if you look in the very next line, line 21, how many times did you file the papers? I had done it once, but I could not be present there because I was in jail. And that's what she said earlier. How about what she said on page 144, line 15 through 23, when the question was asked again, but you testified today that the 1996 arrest had nothing to do with the filing of the papers? Can you explain that contradiction? No, I don't understand. I think she didn't realize what the contradiction was, because in her mind, she had been testifying consistently. Well, it's a simple thing. You either filed once or twice. What's the contradiction? You have to explain why you said it once, one way and once another. Because she, in her mind, she never said that she filed the papers once. No. We don't know what's in her mind, because she didn't say this is in my mind. What we've got to do is get the cold record. What bothers me on this issue about translation or what she said, nowhere do I see the judge or any of the lawyers or the person saying the translator's got it wrong. I don't understand what's going on because I said this. He didn't say that. There's no translation indications in this transcript that people were not understanding each other. She just said, I don't understand. Now, that could be evasive. That could be whatever. It's just what she said. But, again, these are simple things. Did you file once or twice? You've asked about the contradiction. She says, no, I don't understand. It's a nonresponsive answer is what it is. Well, I'd like to reserve. Well, I don't have much more time, but I think if you look at 143, you can also see that she actually, if you look at line 18, so before you were arrested, you had not applied to find your husband. Is that true? And she said no, meaning it is not true that I had not applied before for my husband. And second, after that, so you filed papers from you after you were released in 1996. And, again, she says, yes, I did. And if you look earlier above 142 to 143, the whole time she's stating I'd done it once in jail but could not be present there. That's regarding the first time. Next line in 143. Okay, so after you couldn't be present, did you file anything more? And, again, she says, yes, after I returned from jail, I filed. So I think the whole testimony is actually rather consistent, and it's – it could be the – and I think she was focused only on the second papers, and she was talking about the second papers only. And I'll reserve whatever time left for rebuttal. Thank you, counsel. If the Court please, I have Marshall Tamor Golding representing in this case. This is, as Petitioner himself has said, a credibility issue, which means the issue is did – are the asserted facts upon which Petitioner based her case, did they actually occur in the manner in which he says they occurred? For example, he starts off by – he talks about the reasons that led to her arrest. There's a word that's used. It's the reasons that led to her supposed arrest, her claimed arrest, because that is what the IJ had to decide. Was she really arrested, or is this just a story she's telling? Now, I suggest to you that there are two principles that govern the resolution of this case. The first is that the burden was upon Petitioner to establish the truth of her story. And the second is, of course, that in reviewing, you apply the no reasonable fact finder test. In other words, you have to sustain the administrative decision unless no reasonable fact finder could have found the way the immigration judge did in this case. Now, the burden – I'm sorry, sir? Counsel who was representing her has been disbarred by this court for fraudulent practices in the immigration proceedings. I didn't know that. Well, it's true. And so that's a problem. We have a – and we've had a number of cases, some of our colleagues have written about it, is that the process gets corrupted by these corrupt practitioners. And reading the transcript, I see a woman who is obviously confused. I wasn't there. We have to – as you say, we have to rely on the immigration judge who was. But it's very troublesome where you have someone who has been disbarred. I think I'm correct. That's what our – that's what our records show. Many instances of many cases. Now, if you're unaware of that as counsel for the government, I take that as a fact, does that give you any pause that a woman whose life and freedom are dependent on getting a fair hearing may have been put at a disadvantage by an established incompetent counsel? And do you not think it might be appropriate for the immigration judge to have an opportunity to reevaluate this person in light of that fact, that is, that a lawyer who put this woman on wasn't really a very good lawyer at all. In fact, he was so bad he's been disbarred. Well, I think the answer to that, Your Honor, is that there is a procedure to cover this very situation. It's called a motion to reopen. And she could – we – you cannot on this record decide, well, this guy is incompetent, because that wasn't read or raised at any point. The place to raise it is for her to come back to the board and say, I move to reopen because I was represented by an idiot counsel. But that's not this – that's not this case. And is it still – does she still have time to do that? It won't be dismissed as untimely if she makes that motion? I'm not sure. But if she has run out of time, the point is, as soon as she learns, I would say her time to reopen – and I think the board would decide it this way, I'm not sure – that her time to move to reopen would run from when she learned that her previous counsel had been disbarred. I don't know that she ever learned that until now. Well, it's not in the record, so I don't – but the thing is that if you – you're going to leave – I'll make two comments. Yes, I've read quite a number of records where I wondered about the competency of the alien's counsel. But you're going to have no finality if you can keep raising it and raising it and raising it. I've actually seen cases in which one attorney moves to reopen based upon the supposed incompetence of another attorney, and in another case, that same attorney has moved to reopen of another case based on the incompetence of the first attorney. You're absolutely right. That's what happens, and that's one of the problems of having a lot of incompetent attorneys in the immigration field, that even the ones that make the motion on the first one are equally incompetent. And then it doesn't solve the problem of due process or of a person getting a fair trial. It tells you that this area is permeated with unfair hearings because the person doesn't have representation and therefore isn't receiving due process. Well, I would say this, Your Honor. If the attorney who represented her was the one who wrote the brief, the opening brief. He did. He did. I had great difficulty understanding what he was saying in that brief. So did we. But as far as I read the transcript, I am new to this. I was not the one who briefed this case. So I'm basically, what I know about this case is roughly what I read in my room at my hotel last night or yesterday. But reading the transcript, I didn't see any real problems in the way he represented her in the hearing. And possibly the difficulty is that you have people coming in making claims who don't really have a case. I take that point. You're in the same boat we are, then. And that's why I said the one who would be best situated to decide whether or not this had any effect at all would be the immigration judge. But she needs to move to reopen, and she needs to move. Let me ask you something else. We have a process here we've invoked with the understanding of the Department of Justice and DHS. It's a voluntary mediation option where, before we render any decision, you all have the opportunity to sit and decide whether there is a way to resolve this short of our ruling and going through the process. You don't have to do it, but it's sometimes been a way to get some communication in a case where there may be some merit. I think my answer to that was going to have to be that certainly as I read the transcript, this seemed to be the average immigration attorney. I didn't see any real problems. I thought if he had a problem at all, it was his problem trying the same problem that the judge had, understanding what this woman was saying. Probably because he had a doctor. So, therefore, I cannot say on the record, I cannot say, oh, yes, this is clearly a case of mediation. It seems to me a motion to reopen would have to show that she was actually deprived of a fair hearing by incompetence of her counsel. And I cannot say that directly on the record. Let me put another spin on this, because now we've gotten to the point where we're into the merits of a disbarred counsel determining that that disbarred counsel, something did wrong in this record when there's no record to show that. So unless we rule that because somebody's been disbarred that there's an automatic procedure to declare his performance that this hearing was incompetent, we're not going to go anywhere. First of all, as I read the record, the first counsel presented all the briefs, and he moved to withdraw on February 21st of 2006. And this Court gave Cower notice that within 28 days she could file a substitute opening brief. She did not do that. We then finally learned that she had new counsel shortly before this hearing, and new counsel has appeared. New counsel hasn't made any motions. She didn't get new counsel other than that. This is the first time this whole issue has come up. So what are we supposed to do with that in your opinion relative to your position in this case? I think your question almost answers itself, Judge Bonetti. My question is, since at the trial below or the hearing, the judge was practically a prosecutor and took a very active role in presenting the case and doing the cross-examination, so clearly there's nothing wrong with the Court taking an active role on appeal. So if we discover an injustice, and if we discover a hearing that appears as if it may be as a result of the lawyer's incompetence, that the witness to whom, as Judge Fisher said, he may not have spoken, managed to be confused by all of the questions which she didn't understand, some of which she said she didn't understand. And if I recall correctly, at points, the translator said that he couldn't understand. If the Court is going to play an active role in these immigration cases, is there any reason that even though we have not had any motion ourselves, we couldn't encourage the parties to try to see that there is a fair process in this case? I am not sure that it is the function of this Court to play, as you put it, an active role in these immigration cases. Your function is to review what has happened below and find out if it is so bad that you have to reverse. And I don't think that's the case here. New Counsel could have moved at this point. I mean, we're now stuck with the record as we have it. And New Counsel has brought the case to us as we have it. Nobody has moved to try to reopen or anything else. So at this point, I'm asking you, what function should this Court do? I think he's answered. Pardon me? I think you've answered the question. I think what you should do is review the record you have here on the issues before it, which is, is a finding that her testimony was credible, that she was telling the truth. Is that compelled? That is your only function in this case, I suggest. Or that it's an unfair process. Pardon me? Or that it's an unfair process because it's difficult for us to make a decision based on this transcript. I don't see that difficulty, because what I see — No, you don't. That part is our job. Pardon me? That part is our job, to make that judgment. So I think that's basically where it is. And basically, it seems to me, in fact, I was going to lead off with what Judge Breyer said, that the trial that happened in 1995 supposedly — I'm Fisher. That's Brunetti. Well, you were the one who — your first question. And also, we're well out of time. Well, I was just going to say the fact that suddenly she gets — Can I finish this sentence? Sorry. That suddenly — We're well out of time, I said. Thank you. Okay. I'll take the hint. I didn't think I was being all that subtle. Pardon me? Not for a moment. Thank you, Your Honors. I would just like to note that our office is in the process of evaluating filing a motion to reopen with the Board. I would hope so. We just got the record a few weeks ago and have been going through it. So we haven't had — Well, I would expedite that process, if I were you. Yes. A few weeks, if you've had it, you could have done that before today's hearing. Yes, Your Honors. Well, we are evaluating it right now. The second thing I would like to bring up is, you know, I do — your Honors raised the translation problems. And although it's not clear on the face of the record, necessarily obvious on the points at which it does hint at possible translation problems. And then the other point I would like to bring up is I think Mr. Kung, the previous attorney's ineffective assistance at counsel, is quite obvious even on the face of the record. If you look at the record, the judge had asked him to get documents twice. She gave him an opportunity and gave him plenty of time to bring documents to the hearing. Both times, she just brought it on the day of the hearing. And when asked why, he said, oh, the attorney — the client just gave them to me today. But when you looked at her testimony, she said — or he had said that, you know, I will advise her of it and I will advise her of it now to bring these documents. And when you actually look at her testimony, she said, no, he only advised me about two months back to get these affidavits and the other supporting documents. And I think if you look at the briefs, both at the BIA level and the Ninth Circuit brief, they clearly show that he didn't put any time or preparation into these briefs and they were basically boilerplate briefs without really addressing Petitioner's specific issues in her case. Thank you very much. Thank you, counsel. The case is argued will be submitted. Next case on the calendar is Singh v. Mukasey. Thank you. Thank you.
judges: Reinhardt, Brunetti, Fisher